UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISHAN WANG,<br>*Plaintiff*,<br><br>v.<br><br>ANGEL QUIROS *et al.*,<br>*Defendants*. | No. 3:23-cv-571 (JAM) |

ORDER TO SHOW CAUSE
WHY ACTION SHOULD NOT BE DISMISSED
PURSUANT TO 28 U.S.C. § 1915A

    Plaintiff Lishan Wang is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 alleging that Connecticut officials violated the Eighth Amendment and discriminated against him by failing to provide him adequate medical treatment. Based on my initial review of the complaint pursuant to 28 U.S.C. § 1915A, it appears that Wang has not fully exhausted his administrative remedies. But before dismissing this action for failure to exhaust, I will permit Wang an opportunity to respond to the concerns set forth in this order.

BACKGROUND

    The complaint arises from Wang's incarceration as a sentenced state prisoner at the Cheshire Correctional Institution ("CCI") in Cheshire, Connecticut. The complaint names seven defendants in their individual and official capacities: Angel Quiros, the DOC Commissioner; Ned Lamont, the Governor of Connecticut; Jennifer Reis, CCI Warden; Dr. Richard Williams, a doctor at CCI; Vincent Santavenere, Chief of Healthcare & Nurse Practitioners; and two nurses referred to as "Nurse Emmy" and "Nurse Ilene."[1]

---

[1] Doc. #1 at 1, 3–5 (¶¶ 4–11).

1

The following facts alleged in the complaint are accepted as true for the purpose of initial review only. On April 14, 2023, Wang told nurses at the CCI medical clinic that he had had bronchitis since the previous week and a broken finger since eight weeks ago.[2] Nurse Emmy told Wang to be patient because "no one knew" when a surgeon would come to CCI.[3] Nurses Emmy and Ilene denied Wang's request for medical tape to treat his finger.[4] Then, Nurse Ilene and Wang argued about how often Wang signed up for urgent care: Nurse Ilene claimed Wang signed up for urgent care every week, which Wang denied.[5]

Nurse Emmy told Wang that CCI only has one doctor on staff: Dr. Richard Williams.[6] Nurse Emmy also denied Wang's request for antibiotics and expressed doubt about his self-diagnosis of bronchitis.[7] As a result, Wang self-treated his cough and fever symptoms with orange-peel tea.[8] Both nurses were "very negative with Wang, dismissing Wang's complaint about his signs and symptoms, and his need to take care of his broken finger."[9]

Wang additionally alleges that there was a "racial factor" to Nurse Ilene's treatment of him because she "often engaged in hearty, casual talks with Latino inmates in Wang's housing unit," but "she used false accusation against Wang to deny his need for medical care," and "[t]his is discrimination."[10]

Wang has attached several grievance forms to his complaint:

---

[2] *Id.* at 5 (¶ 12).
[3] *Id.* at 6 (¶ 13).
[4] *Ibid.*
[5] *Id.* at 6–7 (¶¶ 13–14).
[6] *Id.* at 7 (¶ 14).
[7] *Id.* at 7–8 (¶ 14).
[8] *Id.* at 9 (¶ 20).
[9] *Id.* at 8 (¶ 15).
[10] *Id.* at 8 (¶ 18).

- On March 18, 2023, Wang filed an Inmate Request Form (CN 9601) seeking medical care for his broken finger.[11]

- On April 10, 2023, Wang filed another Inmate Request Form (CN 9601), again seeking care for his broken finger, as well as stating that he was suffering from symptoms of bronchitis but that nobody had responded to his request for urgent care.[12]

- On April 17, 2023, Wang filed a Health Services Administrative Remedy (HSAR) - Level 1 form (CN 8901) complaining about the medical staff's failure to treat his broken finger and his bronchitis.[13]

- On April 27, 2023, Wang filed another Inmate Request Form (CN 9601) complaining that "I was sent to UConn. Hospital for nothing."[14] He complained that he was supposed to have a colon cancer screening.[15] This grievance makes no mention of Wang's broken finger or bronchitis but states: "I've filed a few complaints/grievance about medical clinic not taking care of my illnesses in past several weeks. No responses!"[16]

Wang alleges that the four medical staff defendants—Nurses Emmy and Ilene, their supervisor, Vincent Santavenere, and Dr. Richard Williams—were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[17] Wang further alleges that Nurse Ilene racially discriminated against Wang in denying him medical treatment.[18] Finally, Wang alleges that DOC Commissioner Angel Quiros, CCI Warden Reis, and Connecticut Governor

---

[11] *Id.* at 21.
[12] *Id.* at 20.
[13] *Id.* at 18.
[14] *Id.* at 24.
[15] *Ibid.*
[16] *Ibid.* Wang has also attached a copy of an inmate request form dated January 10, 2023 complaining about failure to receive notices of filing from the Court. Doc. #1 at 22.
[17] *Id.* at 11–12 (¶¶ 30–32).
[18] *Id.* at 8 (¶ 18), 11 (¶ 30).

Ned Lamont failed to employ qualified medical staff to address Wang's medical needs.[19] He seeks compensatory and punitive damages, as well as a declaration that the defendants violated his constitutional rights.[20]

## DISCUSSION

Congress by law requires that a federal court conduct an initial review of a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[21] Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid*.

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions … by a prisoner … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the remedies can provide the relief that the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). Furthermore, prisoners must comply with all procedural rules

---

[19] *Id.* at 11 (¶ 29).
[20] *Id.* at 12 (¶¶ 33–39).
[21] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

In the ordinary course, "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). But "[a] district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Ibid.* Even so, when a court intends to dismiss a complaint because of a prisoner's failure to exhaust administrative remedied, the court must first ensure that the inmate receives notice of the court's intent to dismiss and has had an opportunity to be heard. *See Snider v. Melindez,* 199 F.3d 108, 112–13 (2d Cir. 1999).

DOC has an administrative directive—Administrative Directive 8.9 ("AD 8.9")—that governs procedures for responding to a prisoner's request for review of health care services.[22] *See generally Cerilli v. Bysiewicz*, 2023 WL 2631813, at *4–5 (D. Conn. 2023) (describing requirements of AD 8.9).

The first stage is informal resolution, whereby a prisoner must attempt to verbally resolve the problem with an appropriate staff member, and if unsuccessful, must submit a written request for resolution to a supervisor on an Inmate Request Form, also known as a CN 9601.[23] The prisoner must clearly state the problem and remedy requested.[24] Prison officials have 15 business days to respond to the Inmate Request Form.[25]

---

[22] *See Administrative Directive 8.9: Health Services Administrative Remedies*, Conn. Dep't of Corr. (Apr. 30, 2021) ("AD 8.9"), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf [https://perma.cc/GNN6-ZKYS].
[23] *See* AD 8.9 at 6 (§ 6(b)(ii)).
[24] *Id.* at 6 (§ 6(b)(ii)(3)(i)).
[25] *Id.* at 6 (§ 6(b)(ii)(7)).

5

If the prisoner is unsatisfied with the response, or if prison officials do not respond within 15 days, the second stage of the grievance process is for the prisoner to file a formal request for one of two types of Health Services Administrative Remedy ("HSAR"): remedies concerning "a diagnosis or treatment decision … including a decision to provide no treatment" (what I will refer to as "Diagnostic HSARs") and remedies concerning "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider" (what I will refer to as "Administrative HSARs").[26]

For either type of HSAR, the prisoner must submit an HSAR Level 1 form (CN 8901) within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the HSAR.[27] Prison officials, in turn, have 30 business days to respond to an HSAR Level 1 form.[28] If the prisoner is unsatisfied with the response, or if prison officials do not respond within 30 days, then the prisoner may, within 5 calendar days, file an HSAR Level 2 form (CN 8902).[29]

According to Wang's submissions, he sought a combined Diagnostic HSAR and an Administrative HSAR by filing a Level 1 HSAR form on April 17, 2023. But the record does not disclose any response to the Level 1 HSAR or that Wang waited 30 days to see if there would be a response. Instead, Wang filed this action on May 3, 2023—just 16 days after filing his Level 1 HSAR form.[30] Therefore, it appears that Wang did not fully exhaust his administrative remedies through Level 2 of the HSAR process as required under AD 8.9.

---

[26] *Id.* at 6 (§ 6(a)).
[27] *Id.* at 7 (§ 6(b)(iii)(4)).
[28] *Id.* at 8 (§ 6(c)(ii)(3)).
[29] *Id.* at 8 (§ 6(c)(ii)(3)–(4), (iii)(1)). The third stage under AD 8.9—filing an HSAR Level 3 form (CN 8903)—applies only to appeals that challenge Department-level policy, that challenge the integrity of the HSAR procedure, or when the time has elapsed for prison officials to respond to a Level 2 form. *Id.* at 8–9 § 6(c)(iv)(1)–(2).
[30] Doc. #1.

Indeed, Wang appears to acknowledge that he did not fully exhaust his administrative remedies prior to filing this lawsuit. He contends that exhaustion is "useless because the damage had been done when it was the time to file administrative grievance. And the fact that medical clinic at CCI had denied medical care to Mr. Wang can NOT be repaired when the damage was done or when the diseases were cured by themselves."[31] But the exhaustion requirement applies notwithstanding any failure of the administrative remedy process to afford the form of relief that the prisoner seeks. *See Booth*, 532 U.S. at 741 n.6 (holding that the statutory exhaustion requirement made no distinction based on the particular "forms of relief sought and offered").

Wang also cites *Rucker v. Giffen*, 997 F.3d 88 (2d Cir. 2021), in which the Second Circuit excused a prisoner's failure to exhaust "when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief." *Id.* at 94. But "Rucker experienced extreme medical distress for days, was admitted to the hospital for over a month during which he was put in a coma and underwent surgeries," including removal of his pancreas and 200 centimeters of his intestine, "that nearly caused his death." *Id*. at 94.

Unlike Rucker, Wang did not suffer from a debilitating medical condition that prevented him from filing a timely administrative remedy. His complained-of conditions—a broken finger and self-diagnosed bronchitis—did not prevent him from filing an HSAR Level 1 form three days after meeting with medical staff. Nor does Wang otherwise contend or allege facts to plausibly show that administrative remedies were unavailable.

---

[31] *Id.* at 10 (¶ 24) (*sic*).

Accordingly, it appears to me that Wang has not properly exhausted his administrative remedies as required by law. In the event that there is some aspect of the facts or the law that I have overlooked, I will allow Wang until **October 24, 2023** to file any response to this order to show cause explaining why this action should not be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the reasons set forth above, it appears that this action must be dismissed for failure to exhaust administrative remedies. If, however, Wang has grounds to believe that this action should not be dismissed, then he may file a response to this order on or before **October 24, 2023**.

It is so ordered.

Dated at New Haven this 3rd day of October 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge